ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| LOCATION SERVICES, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | NO. 4:18-CV-744-A |
| | § | |
| DIGITAL RECOGNITION NETWORK, INC., | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT DIGITAL RECOGNITION NETWORK, INC.'S MOTION TO DISMISS AND BRIEF IN SUPPORT

Cole B. Ramey
State Bar No. 16494980
W. Alan Wright
State Bar No. 22062700
Timothy E. Taylor
State Bar No. 19723895
KILPATRICK TOWNSEND & STOCKTON, LLP
2001 Ross Avenue, Suite 4400
Dallas, Texas 75201
Telephone:   (214) 922-7100
Facsimile:    (214) 922-7101
Email:        cramey@kilpatricktownsend.com
              alan.wright@kilpatricktownsend.com
              ttaylor@kilpatricktownsend.com

*Counsel for Defendant*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

I.      INTRODUCTION ............................................................................................ 1

II.     STATEMENT OF FACTS .............................................................................. 4

III.    ARGUMENT ................................................................................................... 6

    A.   Motion to Dismiss Standard............................................................................ 6

    B.   Plaintiff's Antitrust Claims Fail Because Plaintiff has not Pleaded an Antitrust Injury or Harm to Competition. ............................................................................. 7

    C.   Plaintiff's Antitrust Claims fail because Plaintiff concedes that DRN lacks the power to exclude competition. ................................................................................... 9

    D.   Count II Fails Because Plaintiff failed to sufficiently allege a conspiracy or an exclusive dealing arrangement whose effect was to foreclose competition. ............ 10

    E.   Plaintiff's State Law Claims Fail. ................................................................. 13

        1.   Unfair Competition ....................................................................................... 13

        2.   Cartwright Act (Cal. Bus. & Prof. Code §§ 16700-16770) .......................... 13

IV.    CONCLUSION............................................................................................... 14

CERTIFICATE OF SERVICE .................................................................................. 16

**TABLE OF AUTHORITIES**

**Cases**

*Apani Sw., Inc. v. Coca-Cola Enters., Inc.,*
128 F. Supp. 2d 988 (N.D. Tex. 2001) ........................................................... 11, 12

*Apani Sw., Inc. v. Coca-Cola Enters., Inc.,*
300 F.3d 620 (5th Cir. 2002) ...................................................................... 11

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ........................................................................ 1, 6, 7, 14

*Ass'n of Taxicab Operators, USA v. Yellow Checker Cab Co. of Dallas/Fort Worth, Inc.,*
910 F. Supp. 2d 971, 975 (N.D. Tex. 2012) ..................................................... 12

*Atl. Richfield Co. v. USA Petroleum Co.,*
495 U.S. 328 (1990) ........................................................................... 7, 8, 10

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ........................................................................ 1, 3, 6, 14

*Bob Maxfield, Inc. v. Am. Motors Corp.,*
637 F.2d 1033 (5th Cir. 1981) ..................................................................... 11

*Brown Shoe Co. v. United States,*
370 U.S. 294 (1962) ................................................................................. 8

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
429 U.S. 477 (1977) ................................................................................. 8

*Bullet Concrete Materials, Inc. v. Union Pacific Railroad Co.,*
No. H-07-3182, 2009 WL 10693982 (S.D. Tex. Feb. 27, 2009) ........................... 8

*C.E. Servs., Inc. v. Control Data Corp.,*
759 F.2d 1241 (5th Cir. 1985) ...................................................................... 7

*Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund,*
14 P.3d 234 (Cal. 2001) ............................................................................ 14

*Collins v. U.S. Bank, Nat. Ass'n,* No. 2:14-cv-07726-ODW(JPRx),
2015 WL 470289 (C.D. Cal. Feb. 3, 2015) ...................................................... 13

*Eastman Kodak Co. v. Image Tech. Servs., Inc.,*
504 U.S. 451 (1992) ................................................................................. 7

*Freeman v. San Diego Ass'n of Realtors,*
77 Cal. App. 4th 171 (Cal. App. 4th Dist. 1999) .............................................. 14

*G.H.I.I. v. MTS, Inc.,*
147 Cal. App. 3d 256 (Cal App. 1st Dist. 1983) ............................................... 14

*Golden v. Sound Inpatient Physicians Med. Grp., Inc.*,
   93 F. Supp. 3d 1171 (E.D. Cal. 2015) ................................................................ 13

*Johnson v. Capital Accumulation Plan of Chubb Corp.*,
   No. Civ. A 3:98-CV-2296-D, 1998 WL 907002 (N.D. Tex. Dec. 17, 1998) .................... 6

*Jonson v. Hosp. Corp. of Am.*,
   95 F.3d 383 (5th Cir. 1996) ................................................................ 11

*L.G. Motorsports, Inc. v. NGMCO, Inc.*,
   No. 4:11CV112, 2012 WL 718603 (E.D. Tex. Mar. 6, 2012) ............................... 8

*Love v. Nat'l Med. Enters.*,
   230 F.3d 765 (5th Cir. 2000) ................................................................ 9

*Oxford Global Res., Inc. v. Weekley-Cessnun*,
   No. Civ. A 3:04-CV-0330-N, 2004 WL 2599898 (N.D. Tex. Nov. 12, 2004) .................. 7

*Pisharodi v. Columbia Valley Healthcare Sys., LP*,
   No. 1:14-CV-4, 2015 WL 11123315 (S.D. Tex. Jan. 29, 2015) ............................ 8

*Svenson v. Google Inc.*,
   65 F. Supp. 3d 717 (N.D. Cal. 2014) ...................................................... 13

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
   546 F.3d 991 (9th Cir. 2008) ............................................................. 14

*Tour Strategy LLC v. Star-Telegram, Inc.*,
   No. 4:18-CV-074-A, 2018 WL 3242280 (N.D. Tex. July 3, 2018) ......................... 11

*U.S. v. E. I. du Pont de Nemours & Co.*,
   351 U.S. 377 (1956) ...................................................................... 10

*Zef Scientific, Inc. v. Shimadzu Scientific Instruments, Inc.*,
   2016 WL 1255787 (S.D. Cal. 2016) ........................................................ 13

**Statutes**

15 U.S.C. § 1 ................................................................................ 1

15 U.S.C. § 2 ................................................................................ 1

15 U.S.C. § 15 ............................................................................... 1

## DIGITAL RECOGNITION NETWORK, INC.'S MOTION TO DISMISS AND BRIEF IN SUPPORT

Defendant Digital Recognition Network, Inc. ("Defendant" or "DRN"), files this Motion to Dismiss and Brief in Support, and would respectfully show the Court as follows:

### I.   INTRODUCTION

Plaintiff asserts claims against DRN under Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1 and 2), Section 4 of the Clayton Act (15 U.S.C. § 15), and under California law. Plaintiff's antitrust claims are based on conclusory and implausible assertions and fail under a proper application of the standards announced by the Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and decisions of the Fifth Circuit and this Court interpreting them.

The crux of Plaintiff's antitrust complaint is that one-year non-competition provisions in DRN's agreements with 600 repossession agents it pays to collect LPR data has prevented Plaintiff from competing in the market for LPR data used for vehicle repossessions and recoveries. The facts properly pled by Plaintiff, however, demonstrate two fatal flaws in its argument: (1) while Plaintiff has allegedly been harmed by DRN's conduct, Plaintiff has pled no facts demonstrating harm to competition, and (2) Plaintiff's argument that DRN's conduct has prevented it from acquiring LPR data is based on the factually unsupported (and unsupportable) premise that *only* repossession agents are capable of collecting LPR data, and there are only 800 such agents, *in the entire United States.*

It is black letter law that to properly plead an antitrust claim under the Sherman Act, a competitor must do more than allege that it suffered some injury as a result of the defendant's conduct, it must plead sufficient facts demonstrating an injury to *competition.* The Complaint alleges that DRN's non-competition provisions have prevented Plaintiff from collecting LPR

data and thereby obtaining any significant share of the market for LPR data used for vehicle recovery. The Complaint alleges no other facts from which it could plausibly be determined that any other competitor has suffered such injury. In fact, the Complaint alleges that DRN's largest competitor, MVTRAC, has actually *gained* market share, and is completely silent as to the effect of DRN's conduct on the only other competitor identified, Plate Locate. Plaintiff's conclusory allegations that competition has been harmed because DRN's non-competition provisions have led to higher prices (because Plaintiff intends to offer lower prices) and lower output (because Plaintiff promises to scan more LPR data than DRN with agents currently under contract with DRN), are not facts establishing a plausible claim of harm to competition. Because Plaintiff has failed to adequately plead antitrust injury, Plaintiff's antitrust claims must be dismissed.

The Complaint also fails to plead any facts to support the oft-repeated assertion that only certain types of repossession agents, dubbed "high value vehicle repossession agents" in the Complaint (*see* Compl. ¶119), are capable of collecting LPR data, which Plaintiff concedes "consists solely of publicly observable information." Compl. ¶19. Because LPR data is available to anyone with a camera to capture it, and there is an unlimited supply of it, Plaintiff's claims must necessarily fail unless the Complaint alleges a plausible set of facts showing that "high value vehicle repossession agents" are necessary for the collection of LPR data.

The mere fact that DRN pays certain agents to collect LPR data is not sufficient to demonstrate that *only* those agents can do so. While Plaintiff does allege facts arguably suggesting that only those agents will be interested in buying LPR cameras, Plaintiff's desire to make a profit on camera sales does not transform DRN's non-competition provisions into the reason Plaintiff cannot acquire LPR data. There is no reason alleged by Plaintiff why they can't simply equip any number of willing drivers with LPR cameras and pay them to collect LPR data

in high value locations. When Amazon can find a seemingly limitless supply of drivers to deliver packages for rock-bottom prices, and Uber seemingly has an inexhaustible supply of people willing to drive others around for next-to-nothing, it is inconceivable that Plaintiffs cannot find *anyone* to equip with the proper cameras to gather LPR data. DRN's conduct in capturing LPR data and assembling it into a database does not impair or diminish the ability of any competitor to do so. In economists' terms, such publicly observable data is non-rivalrous. One person or companies' use of it does not deplete it or otherwise diminish its availability to other users. Publicly observable data or information is also non-excludable. One person or companies' observation of, or access to, publicly observable information does not preclude its ability to be observed, accessed, or even recorded by others. In this instance, LPR data used for repossessions or recoveries is a non-rival product or good in that multiple entities can collect and use the same datum. As pleaded by Plaintiff, DRN lacks the capacity to exclude competition, a critical element of a monopolization claim.

Plaintiff's theory regarding barriers to entry is that the only way to gather LPR data is to use the repossession agents under contract to DRN. This theory expressly assumes that (i) small tow-truck companies in rural areas are not adequate substitutes, (ii) other companies with a fleet of cars, such as taxi services, are not realistic alternatives, (iii) the only companies that purchase LPR technology are those that are compensated for repossessing vehicles, and (iv) others without a large network of repossession agents cannot be incentivized to gather LPR data. *Id.* at ¶¶54, 56, 85. These assumptions are not plausible as required by *Twombly* and its progeny and fail wholly to explain or address why Plaintiff cannot obtain LPR data in other ways. For Plaintiff's claims to succeed, it must plead and prove that there is no other way that it can collect photographs of

license plates than by using some or all of the approximately 600 repossession agents who have entered into contracts with DRN. Such a theory is simply not plausible.

Plaintiff's state law claims are similarly deficient. Plaintiff's unfair competition claim fails and must be dismissed because Plaintiff lacks standing under the UCL because it has not sufficiently pleaded economic loss or that the economic injury was the result of an allegedly unfair business practice. Plaintiff has alleged no economic injury as a result of DRN's alleged unfair business practice. Merely stating that it has been "harmed by DRN's unfair competition" does not allege a specific economic injury sufficient to meet the federal pleading standard. Plaintiff has not alleged any facts showing that Defendant's business practice changed its economic position at all.

Plaintiff's Cartwright Act claim must be dismissed because it does not allege a conspiracy, which is an essential element of the cause of action. In addition, the Cartwright Act claim fails for the same reasons as Plaintiff's claim under Section 1 of the Sherman Act, because Plaintiff's Complaint fails to assert detailed, plausible facts showing that DRN's agreements with its agents foreclose competition in a substantial share of the relevant market.

For these reasons, the Court should either decline to exercise supplemental jurisdiction over the state law claims, or, in furtherance of judicial economy, dismiss those claims outright.

## II.   STATEMENT OF FACTS

Plaintiff's claims rest on the allegation that DRN violates antitrust laws "by unlawfully maintaining monopoly power in the market for license plate recognition ("LPR") data used for vehicle repossessions and recoveries." Complaint ¶3. LPR data is nothing more than "information about where and when a particular license plate was spotted." Id. at ¶4. As used by Plaintiff in the Complaint, "'LPR data' consists of photographic images of vehicle license plates

and various pieces of information related to each of those images, including the license plate number, a GPS coordinate of the location where the photo was taken, and the time and date when the photo was taken." *Id.* at ¶18. Plaintiff acknowledges that "LPR data consists solely of publicly observable information." *Id.* at ¶19. Plaintiff alleges that "the key to competing successfully in this market is continually obtaining a large volume of LPR data, particularly more recent data." *Id.* at ¶51.

Plaintiff alleges that small tow-truck companies in rural areas are not adequate substitutes. *Id.* at ¶54. "Other companies with a fleet of cars, such as taxi services, are not realistic alternatives to a network of vehicle repossession agents. Because of the expense of LPR kits, the only companies that purchase such technology are those that are compensated for actually repossessing vehicles. Because taxicabs cannot do that, they do not purchase LPR kits." *Id.* at ¶56. Plaintiff also alleges that "The principal barrier to entering the relevant market and competing successfully is the time and expense involved in building a sufficiently large LPR database…. [T]o get a viable LPR database, an entrant needs a sufficiently large network of vehicle repossession agents using LPR kits…." *Id.* at ¶85.

Plaintiff claims that DRN sells its LPR kits for $15,000. *Id.* at ¶40. Plaintiff also alleges that it "will provide LPR kits to its agents at approximately half the price that DRN charges," or $7,500. *Id.* at ¶63. Plaintiff asserts on information and belief that "the number of vehicle repossession agents currently using LPR technology is approximately 800" and that the "total number of companies involved in any way with vehicle repossession and recovery in the United States is probably closer to 3,000." *Id.* at ¶39. Plaintiff also claims on information and belief that "the number of DRN LPR kits in current use is approximately 2,000." *Id.* at ¶79. Plaintiff further

claims that "DRN has approximately 600 vehicle repossession agents under contract." *Id.* at ¶103.

## III.   ARGUMENT

### A.   Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6) a court may dismiss a complaint for failure to state a claim upon which relief can be granted. In considering a motion to dismiss for failure to state a claim, "[t]he court must accept as true the allegations of plaintiff's complaint and view them in the light most favorable to plaintiff for purposes of deciding defendants' motion to dismiss." *Johnson v. Capital Accumulation Plan of Chubb Corp.*, No. Civ. A 3:98-CV-2296-D, 1998 WL 907002, at *3 (N.D. Tex. Dec. 17, 1998).

Although courts assume the facts alleged as true, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft*, 556 U.S. at 678. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal citations omitted). In the antitrust setting, the Supreme Court has held that "the need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'show that the pleader is entitled to relief.'" *Id.* at 557. The Court further held in *Twombly* that:

> [I]t is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite another to forget that proceeding to antitrust discovery can be expensive. As we indicated over 20 years ago . . . a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed.

*Id.* at 558 (internal citations and quotations omitted); *see also Oxford Global Res., Inc. v. Weekley-Cessnun*, No. Civ. A 3:04-CV-0330-N, 2004 WL 2599898, at *1 (N.D. Tex. Nov. 12, 2004) ("[T]o survive [a] Motion to Dismiss, [the party] must plead sufficient facts so that each element of the alleged antitrust violation can be identified.").

The Supreme Court reaffirmed this standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), by demanding "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." 556 U.S. at 678 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. Because it does not set forth a factual basis for its myriad allegations of wrongdoing, Plaintiffs' Complaint fails to state any actionable claims. Consequently, Plaintiffs' Complaint should be dismissed in its entirety.

**B.     Plaintiff's Antitrust Claims Fail Because Plaintiff has not Pleaded an Antitrust Injury or Harm to Competition.**

To establish liability for a monopolization claim under Section 2 of the Sherman Act, a plaintiff must demonstrate "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 480 (1992); *C.E. Servs., Inc. v. Control Data Corp.*, 759 F.2d 1241, 1244 (5th Cir. 1985). A private plaintiff must also demonstrate antitrust injury by proving "the loss stems from a competition-*reducing* aspect or effect of the defendant's behavior." *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990).

To assert a claim under the federal antitrust laws, including both Sections 1 and 2 of the Sherman Act, a plaintiff must have suffered an "antitrust injury," meaning "an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes [defendants'] acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977); *Bullet Concrete Materials, Inc. v. Union Pacific Railroad Co.*, No. H-07-3182, 2009 WL 10693982, at *10 (S.D. Tex. Feb. 27, 2009). "[T]here must be an actual or threatened injury to the market as a whole, not just to a particular plaintiff." *Pisharodi v. Columbia Valley Healthcare Sys., LP*, No. 1:14-CV-4, 2015 WL 11123315, at *2 (S.D. Tex. Jan. 29, 2015). "The antitrust laws were enacted for 'the protection of *competition*, not *competitors*.'" *Atl. Richfield Co.*, 495 U.S. at 338 (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962)) (emphasis in original). "Section 1 claimants must show more than mere injury to their own positions as competitors in the market." *L.G. Motorsports, Inc. v. NGMCO, Inc.*, No. 4:11CV112, 2012 WL 718603, at *4 (E.D. Tex. Mar. 6, 2012).

Plaintiff has not pled facts sufficient to show an antitrust injury or harm to competition. Plaintiff has alleged that there are four participants in the relevant market: "DRN claims to possess 6.5 billion entries of LPR data.... [T]he databases of the other three competitors comprise approximately 1 billion (MVTRAC), 600 million (Location Services), and 200 million (Plate Locate) entries. *Id.* at ¶81. Plaintiff alleges that DRN is the largest of three competitors in the alleged product market, LPR data used for vehicle recoveries. Compl. ¶¶67, 79. Plaintiff concedes that MVTRAC "has been able to achieve a higher market share than other competitors" and has "grown its market share." *Id.* at ¶¶111, 112. Plaintiff does not allege that the only other competitor, Plate Locate, has lost market share or suffered any injury. The facts pled by Plaintiff support, at most, a plausible claim that Plaintiff alone has been harmed by DRN's conduct. Given

these pleading allegations, Plaintiff cannot maintain that it has suffered an antitrust injury or harm to competition.

Plaintiff also alleges – without any supporting facts – that DRN's non-competition provisions have resulted in "higher prices, loss of choice, reduced output, and lower quality service." *Id.* at ¶120. The only allegations that support that claim are an example of one policy change that resulted in a "real price increase" to lienholders, but Plaintiff offers no facts to suggest what that real price increase was. *Id.* at ¶117. Similarly, Plaintiff's naked assertion that the $15,000 price DRN charges for each LPR kit is "high" is not the sort of fact that makes out a plausible claim. Plaintiff alleges, on information and belief, that DRN agents have been deterred from buying more LPR kits and generating more data, *id.* at ¶116, but allegations on information and belief do not meet the requisite pleading standard. Finally, the Complaint lays out in some detail Plaintiff's "plans," (*id.* at ¶¶60-65), but "plans" and allegations of what Plaintiff intends to do not support the claim that DRN's contracts raised prices or lowered output. (*Id.* at ¶63: Plaintiff "will provide LPR kits … at approximately half the price") Plaintiff alleges in speculatory and conclusory fashion that DRN's non-competition provisions have led to higher prices (because Plaintiff *intends* to offer lower prices) and lower output (because Plaintiff *intends* to create more data). Compl. at ¶116. *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 772 (5th Cir. 2000) (damages for future injuries are not recoverable if the fact of their accrual is speculative).

C.   **Plaintiff's Antitrust Claims fail because Plaintiff concedes that DRN lacks the power to exclude competition.**

Plaintiff alleges that "LPR data consists solely of publicly observable information." Compl. ¶19. As a result, no matter how much LPR data DRN is able to capture or how large DRN's database may be, DRN's capture of LPR data places no limit on how much LPR data competitors may capture or how large competitors' LPR databases may be. Stated differently,

because LPR data is publicly observable information, DRN does not have the capability to exclude others from capturing or assembling LPR data.

Monopoly power is "power to control prices or exclude competition." *U.S. v. E. I. du Pont de Nemours & Co.*, 351 U.S. 377, 391 (1956). That is, monopoly power is power to set prices in the relevant market or exclude competitors from same. *E. I. du Pont de Nemours & Co.*, 351 U.S. at 391-392, 403.

In an effort to avoid this legal obstacle, Plaintiff pleads that barriers to entry enable DRN to exclude competition. Plaintiff alleges that the only way to gather LPR data is to use the 600 repossession agents under contract to DRN, but Plaintiff offers no facts to support such an implausible theory. Plaintiff's theory expressly assumes that (i) small tow-truck companies in rural areas are not adequate substitutes, (ii) other companies with a fleet of cars, such as taxi services, are not realistic alternatives, (iii) the only companies that purchase LPR technology are those that are compensated for repossessing vehicles, and (iv) other persons or entities without a large network of repossession agents cannot be incentivized to gather LPR data. *Id.* at ¶¶54, 56, 85. These assumptions are not plausible as required by *Twombly* and its progeny and fail wholly to explain or address why Plaintiff cannot obtain LPR data in other ways. For Plaintiff's claims to succeed, it must plead and prove that there is no other way that it can collect photographs of license plates than by using some or all of the approximately 600 repossession agents who have entered into contracts with DRN. Plaintiff's pleading is not plausible.

**D.    Count II Fails Because Plaintiff failed to sufficiently allege a conspiracy or an exclusive dealing arrangement whose effect was to foreclose competition.**

To state a claim under Section 1 of the Sherman Act, a party must allege: (1) an agreement, conspiracy, or combination between two or more entities; (2) an unreasonable restraint of trade; (3) anticompetitive effects within the relevant market; and (4) a resulting

antitrust injury suffered by the claimant. *Tour Strategy LLC v. Star-Telegram, Inc.*, No. 4:18-CV-074-A, 2018 WL 3242280, at *5 (N.D. Tex. July 3, 2018). An exclusive dealing arrangement "occurs when a seller agrees to sell its output of a commodity to a particular buyer, or when a buyer agrees to purchase its requirements of a commodity exclusively from a particular seller." *Apani Sw., Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d 620, 625 (5th Cir. 2002). An exclusive dealing arrangement can violate federal antitrust law where it is "probable that performance of the contract will foreclose competition in a substantial share of the line of commerce affected." *Bob Maxfield, Inc. v. Am. Motors Corp.*, 637 F.2d 1033, 1036 (5th Cir. 1981).

The Fifth Circuit has articulated three principles for determining whether foreclosure is sufficiently shown:

> First, the relevant product market must be identified by considering interchangeability and cross-elasticity of demand. Second, the relevant geographic market must be identified by careful selection of the market area in which the seller operates and to which the purchaser can practicably turn for supplies. Finally, a plaintiff must show that the competition foreclosed by the arrangement constitutes a substantial share of the relevant market. That is, the opportunities for other traders to enter into or remain in that market must be significantly limited.

*Apani Sw., Inc.*, 300 F.3d at 625. To determine whether the exclusive-dealing arrangement has a substantial impact on the market, the Fifth Circuit uses a qualitative-substantiality test which considers such factors as "percentage of market foreclosed by defendant, barriers to entry, terms of the agreement regarding duration, ability to terminate the agreement, other available distribution channels, whether the purchaser is an end user, the nature of the product, actual competitive impacts, justifications, and the seller's market power." *Apani Sw., Inc. v. Coca-Cola Enters., Inc.*, 128 F. Supp. 2d 988, 994 (N.D. Tex. 2001).

"Section one applies only to concerted action; unilateral conduct is excluded from its purview." *Jonson v. Hosp. Corp. of Am.*, 95 F.3d 383, 392 (5th Cir. 1996). "Section 1 prohibits

only actions that *unreasonably* restrain competition." *Ass'n of Taxicab Operators, USA v. Yellow Checker Cab Co. of Dallas/Fort Worth, Inc.*, 910 F. Supp. 2d 971, 975 (N.D. Tex. 2012). Plaintiff has not alleged that the agreement is a *per se* violation; therefore, the agreement is analyzed under the "rule of reason" test. *Id.* at 976. "To prove a Section 1 violation under rule of reason analysis, [plaintiffs] must show that the defendants' activities caused an injury to competition." *Id*

Additionally, Plaintiff has failed to plead sufficiently that Defendant had an exclusive dealing arrangement whereby its effect was to foreclose competition. Plaintiff acknowledges that the agreements between DRN and its vehicle repossession agents are of short duration and are easily terminated. Compl. ¶101 ("DRN's contracts with its vehicle repossession agents have a 30-day written notice termination provision."). These types of agreements do not meet the requirements of an "exclusive dealing arrangement" under Section 1 of the Sherman Act. *See Apani Sw., Inc.*, 128 F. Supp. 2d at 994 (listing factors for qualitative-substantiality test).

Plaintiff's Complaint fails to assert detailed, plausible facts showing that DRN's agreements with its agents foreclose competition. Plaintiff has inadequately pled in conclusory fashion that "many" of DRN's agents would terminate their contracts but for the contractual non-compete provision. *See, e.g.*, Compl. ¶¶6, 7, 59, 87. Plaintiff concedes that it has spoken to only one of DRN's agents: DigitalDog (the party that Plaintiff has agreed to indemnify in its suit against DRN). *Id.* at ¶97. No other DRN agent is identified, and the Complaint is silent as to the circumstances of the dealings of any other agent with DRN. Additionally, Plaintiff has not pled a Section 1 violation because it has not stated that the effect of the agreements was to "foreclose competition in a substantial share of the line of commerce affected."

E.    **Plaintiff's State Law Claims Fail.**

   1.    **Unfair Competition**

To bring a claim under California's Unfair Competition Law, a plaintiff must show either an (1) unlawful, unfair, or fraudulent business act or practice; or (2) unfair, deceptive, untrue or misleading advertising. *Golden v. Sound Inpatient Physicians Med. Grp., Inc.*, 93 F. Supp. 3d 1171 (E.D. Cal. 2015). To establish standing under the UCL, a plaintiff must (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that the economic injury was the result of, i.e., *caused by*, the unfair business practice . . . that is the gravamen of the claim. *Collins v. U.S. Bank, Nat. Ass'n*, No. 2:14-cv-07726-ODW(JPRx), 2015 WL 470289 (C.D. Cal. Feb. 3, 2015).

Plaintiff does not have standing under the UCL because it has not established economic loss nor that the economic injury was the result of an allegedly unfair business practice. Plaintiff has alleged no economic injury as a result of Defendant's alleged unfair business practice. Merely stating that it has been "harmed by DRN's unfair competition" does not allege a specific economic injury sufficient to meet the federal pleading standard. Like the plaintiff in *Svenson*, Location Services has not alleged any facts showing that Defendant's business practice changed its economic position at all. *See Svenson v. Google Inc.*, 65 F. Supp. 3d 717, 730 (N.D. Cal. 2014).

   2.    **Cartwright Act (Cal. Bus. & Prof. Code §§ 16700-16770)**

"In order to maintain a cause of action under the Cartwright Act, the following elements must be established: (1) the formation and operation of the conspiracy; (2) illegal acts done pursuant thereto; and (3) damages proximately caused by such acts." *Zef Scientific, Inc. v. Shimadzu Scientific Instruments, Inc.*, 2016 WL 1255787, at *3 (S.D. Cal. 2016). A Cartwright

Act claim requires a motive that violates a fundamental public policy. *Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund*, 14 P.3d 234, 253 (Cal. 2001) (internal citations omitted).

California requires a "high degree of particularity" in the pleading of Cartwright Act violations and therefore generalized allegations of antitrust violations are usually insufficient. *Freeman v. San Diego Ass'n of Realtors*, 77 Cal. App. 4th 171, 196 (Cal. App. 4th Dist. 1999).

Plaintiff's Cartwright Act claim fails because it does not allege a conspiracy. *See G.H.I.I. v. MTS, Inc.*, 147 Cal. App. 3d 256, 266 (Cal App. 1st Dist. 1983) ("Both the Cartwright and Sherman Acts require a showing or allegation of a conspiracy or combination to restrain trade. . . [A conspiracy] is a combination of two or more persons by concerted action to accomplish a crime or unlawful purpose. And it is well settled that a complaint for antitrust violations which fails to allege such concerted action by separate entities maintaining separate and independent interests is subject to demurrer.").

In addition, the Cartwright Act claim fails for the same reasons as Plaintiff's claim under Section 1 of the Sherman Act. As shown above, Plaintiff's Complaint fails to assert detailed, plausible facts showing that DRN's agreements with its agents foreclose competition in a substantial share of the relevant market, which is required under the Cartwright Act. *See Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1002 (9th Cir. 2008).

## IV.  CONCLUSION

Even if the allegations in the Complaint are taken as true, Plaintiff's antitrust claims and associated state law claims fail to satisfy the applicable standards set out in *Twombly, Iqbal*, and their progeny. For the foregoing reasons, DRN respectfully requests that the Court dismiss Location Services' Complaint with prejudice.

---

Respectfully submitted,

By: _____

Cole B. Ramey
State Bar No. 16494980
W. Alan Wright
State Bar No. 22062700
Timothy E. Taylor
State Bar No. 19723895

**KILPATRICK TOWNSEND & STOCKTON, LLP**
2001 Ross Avenue, Suite 4400
Dallas, Texas 75201
Telephone:     (214) 922-7100
Facsimile:      (214) 922-7101
Email: cramey@kilpatricktownsend.com
        alan.wright@kilpatricktownsend.com
        ttaylor@kilpatricktownsend.com

**ATTORNEYS FOR DEFENDANT
DIGITAL RECOGNITION NETWORK, INC.**

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 17th day of September, 2018, a true and correct copy of the foregoing document was forwarded to the following counsel of record via ECF filing and e-mail:

Donna M. Strain
Perkins Coie, LLP
505 Howard Street, Suite 1000
San Francisco, CA  94105-3204
dstrain@perkinscoie.com

Jon B. Jacobs
Perkins Coie, LLP
700 13th Street, NW, Suite 600
Washington, DC  20005-3960
jbjacobs@perkinscoie.com

Adam L. Marchuk
Mark T. Smith
Caroline A. Teichner
Perkins Coie, LLP
131 South Dearborn Street, Suite 1700
Chicago, IL  60603-5559
amarchuk@perkinscoie.com
marksmith@perkinscoie.com
cteichner@perkinscoie.com

*Attorneys for Plaintiff*
*Location Services, LLC*

W. Alan Wright

---